**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION**

DEANNA COLEMAN and
AUGUSTINE PEREZ,

Plaintiffs,

v.

CIVIL ACTION NO. 1:23-cv-01127

CHASE MAUNEY,
*Federal Probation Officer,*
SHERIFF SAMUEL SCOTT PAGE,
*Rockingham County Sheriff*,
ADAM D MOSQUEDA,
*DEA Task Force Officer*,
J TEJEDA,
C T UNDERWOOD,
L S THOMPSON,
J REVIS,
*Officer with the Reidsville Police Department,*
CHRISTOPHER BERSCH,
*Supervising United States Probation Officer*, and
KEVIN BERGER
*Commissioner of Rockingham County*,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Plaintiff Deanna Coleman's *pro se* Objections to Magistrate Judge's Recommendations [ECF 57], filed March 4, 2026, and Motion for Relief from Judgment [ECF 59], filed by Plaintiffs Deanna Coleman and Augustine Perez on March 13, 2026. Defendant J. Revis responded in opposition to the Motion for Relief from Judgment on April 3, 2026. [ECF 60]. Plaintiffs replied on April 8, 2026. [ECF 61]. Thereafter, Plaintiffs filed a Motion to Compel Disclosure of Insurance Information on April 13, 2026. [ECF 62]. On May 4, 2026, Chase Mauney,

Christopher Bersch, and A.D. Mosqueda, together, and Defendant J. Revis, independently, responded to Plaintiffs' Motion to Compel. [ECFs 63, 64]. Plaintiffs replied on May 11, 2026. [ECF 66]. Also pending are Plaintiffs' Motion to Replace Defendant Mark F. Richardson with Lance Metzler, Rockingham County Manager [ECF 65], filed May 8, 2026, and a Notice to the Court regarding Service of Summons [ECF 67], filed May 20, 2026.

**I.**

This action was previously referred to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for submission of his Proposed Findings and Recommendations ("PF&R"). Magistrate Judge Aboulhosn filed his PF&R on February 19, 2026. [ECF 55]. Magistrate Judge Aboulhosn recommended the Court dismiss the Plaintiffs' Complaint due to their failure to effect service upon defendants since filing the Complaint on December 29, 2023. [*Id.*].

Ms. Coleman lodges a series of objections to the PF&R. First, Ms. Coleman objects to the PF&R's conclusion that she failed to provide new evidence as to her indigent status which would qualify her to proceed *in forma pauperis*. [ECF 57 at 3]. Specifically, she explains there is no change in her status as an indigent which should have qualified her for *in forma pauperis* status from the outset. Additionally, she contends the PF&R "wrongly questions whether [she] complied with Rule (d)(4). . . . Especially when the plaintiffs moved for an extension of time to serve summons, because the Defendants failed to return a signed waiver." [*Id.*].

Next, she contends the PF&R contradicts itself by acknowledging the returned certified receipts but noting that Ms. Coleman has not asserted the Defendants were evading service. [*Id.*]. She explains this is because no attempt has been made to serve the Defendants.[1] Ms.

---

[1] Ms. Coleman also appears to raise a question about the meaning behind the PF&R's statement that "there is no evidence that Ms. Coleman ever attempted to effect personal service upon any of

Coleman also asserts the PF&R "erroneously claims that waiting on [Mr.] Perez's application to proceed in forma pauperis had no bearing on her attempting to serve summons." [ECF 57 at 3]. Ms. Coleman contends the reason Mr. Perez submitted his application to proceed *in forma pauperis* was because Ms. Coleman was unable to afford the expense of service. Specifically, she states "[Mr.] Perez's circumstances would normally have assured the granting of his application, and the Defendants would have been served. It was not unreasonable for her to wait." [*Id.*].

Further, because Mr. Perez had to wait 11 months for the Court's disposition on his application, Ms. Coleman contends it "would not have made any difference" had she filed her own application sooner. [*Id.* at 4]. She contends it is unreasonable for the Court to deny a prolonged deadline because neither she nor Mr. Perez's indigent statuses changed following disposition of their applications. [*Id.*]. Accordingly, Ms. Coleman expresses concern that she "is being penalized for her inability to pay the cost of serving summons because of her status of indigency." [*Id.*]. She contends it was the "Court's extensive delay" that impacted Plaintiffs' ability to serve summons. [*Id.*]. Ms. Coleman asks the Court to reject the PF&R because "the Plaintiffs repeatedly asserted that the reason they have not served the summons is that the Plaintiffs are indigent." [*Id.*].

Additionally, Ms. Coleman contends it is not in the interest of justice for the PF&R to reject "Plaintiff's alternative suggestions for dismissal." [*Id.*]. For example, she suggests "[t]he Court could fashion a remedy for the Defendants' failure to waive service of summons to avoid unnecessary expenses, when the rule requires the Defendant to pay the cost of service for failing to return a signed waiver." [*Id.*]. Further, she suggests that the Court "direct the remaining

---

the remaining Defendants during the entirety of the pendency of this action[.]" [ECF 57 at 3]. She states that "if this Court makes an exception, she is more than willing to serve the summons herself." [*Id.*]. Rule 4(c)(2) states "[a]ny person who is at least 18 years old and not a party may serve a summons and complaint." Thus, the PF&R's reference to "personal service" means any person eligible to effect service pursuant to Rule 4.

Defendants to file an answer by a specified period or enter a default judgment because they were on notice of that possibility by the waiver form if they failed to file an answer within 60 days." [*Id.*]. And, again, Ms. Coleman challenges the denial of Plaintiffs' applications to proceed *in forma pauperis*, specifically contending the Court failed to "specify[] the reasons for the denial as required by law, so that the conclusory denials do not appear to be rooted in animus[.]" [*Id.*].

Ms. Coleman contends "[t]he blame for the impediment is misplaced." [*Id.*]. Additionally, Ms. Coleman noted that following the mandate from our Court of Appeals in an appeal related to the instant action, Plaintiffs would have the funds to cover the cost of service of summons. [*Id.* at 5].[2] And, inasmuch as the waiver delivered to Defendants "warned the defendants that if they failed to answer the complaint by the time specified therein, a default judgment may be entered against them[,]" Ms. Coleman contends the remaining Defendants should be directed to answer the complaint. Finally, Ms. Coleman contends the aforementioned, recently published opinion from our Court of Appeals has a "significant impact. . . on the factual and legal conclusions made in this case." [*Id.*]. For all of the foregoing reasons, Ms. Coleman asks the Court to reject the PF&R.

## II.

### *A. Objections to PF&R*

Federal law provides that "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see Samples v. Ballard*, 860 F.3d 266, 272. Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal

[2] Inasmuch as Ms. Coleman sought to file service on May 20, 2026, it appears she now has the funds to effect service. To the Court's knowledge, she has nevertheless not done so.

the Court's order. *See id.; see also Thomas v. Arn*, 474 U.S. 140 (1985) (stating that review of a magistrate judge's factual or legal conclusions is not required as to those portions of the findings or recommendation to which no objections are addressed); *United States v. De Leon-Ramirez*, 925 F.3d 177, 181 (4th Cir. 2019) (Parties may not typically "appeal a magistrate judge's findings that were not objected to below, as § 636(b) doesn't require de novo review absent objection."); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989). "Moreover, a general objection to a magistrate judge's findings is not sufficient [to trigger de novo review] -- 'a party must object to the [magistrate's] finding or recommendation . . . with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *United States v. Benton*, 523 F.3d 424, 428 (4th Cir. 2008) (quoting *United States v. Midgette*, 478 F.3d 626, 621–22 (4th Cir. 2007)); see *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("Courts have also held de novo review to be unnecessary . . . when a party makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations.").

**1. Service Upon Defendants**

Ms. Coleman contends the PF&R contradicts itself by acknowledging the returned certified receipts but noting that Ms. Coleman has not asserted the Defendants were evading service. [ECF 57 at 3]. She explains this is because no attempt has been made to serve the Defendants. Ms. Coleman also asserts the PF&R "erroneously claims that waiting on [Mr.] Perez's application to proceed in forma pauperis had no bearing on her attempting to serve summons." [*Id.*]. Specifically, she states "[Mr.] Perez's circumstances would normally have assured the granting of his application, and the Defendants would have been served. It was not unreasonable for her to wait." [*Id.*]. She contends it was the "Court's extensive delay" that impacted the

Plaintiffs' ability to serve summons. [*Id*. at 4]. Ms. Coleman asks the Court to reject the PF&R because "the Plaintiffs repeatedly asserted that the reason they have not served the summons is that the Plaintiffs are indigent." [*Id.*]. Additionally, she contends the PF&R "wrongly questions whether [she] complied with Rule 4(d)(4). . . . Especially when the plaintiffs moved for an extension of time to serve summons, because the Defendants failed to return a signed waiver." [*Id.* at 3].

As explained *infra,* the denial of Mr. Perez's *in forma pauperis* status was based specifically on whether the claims were cognizable and was not based on Plaintiffs' indigent statuses. The Court adopted the PF&R in March 2025. [*See* ECF 42]. The Court then referred the matter anew to Magistrate Judge Aboulhosn for further proceedings as to Ms. Coleman's remaining claims. Inasmuch as these general conclusory statements do not alert the Court to the grounds for the objection, they need not be considered and are **OVERRULED**.

**2. Alternative Remedies**

Next, Ms. Coleman contends it is not in the interest of justice for the PF&R to reject "Plaintiff's alternative suggestions for dismissal." [*Id*.]. For example, she suggests "[t]he Court could fashion a remedy for the Defendants' failure to waive service of summons to avoid unnecessary expenses, when the rule requires the Defendant to pay the cost of service for failing to return a signed waiver." [*Id*.]. Further, she suggests that the Court "direct the remaining Defendants to file an answer by a specified period or enter a default judgment because they were on notice of that possibility by the waiver form if they failed to file an answer within 60 days." [*Id*.]. And, again, Ms. Coleman challenges the denial of Plaintiffs' applications to proceed *in forma pauperis*, specifically contending the Court failed to "specify[] the reasons for the denial as

required by law, so that the conclusory denials do not appear to be rooted in animus[.]" [*Id.*]. Ms. Coleman has previously requested such alternatives for relief and the Court has repeatedly addressed why these suggested remedies are inapplicable. [*See* ECF 55]. Again, Ms. Coleman fails to point the Court to a specific error in the PF&R. Accordingly, the objections are **OVERRULED**.

### 3. Fourth Circuit Mandate

Additionally, Ms. Coleman asserted that once the mandate from our Court of Appeals is returned in a case where she and Mr. Perez prevailed respecting a civil forfeiture matter, she would have the funds to effect service. [*Id.* at 5]. That mandate has since issued and Ms. Coleman asserts she now has the funds to serve process. Because the waiver delivered to Defendants "warned the defendants that if they failed to answer the complaint by the time specified therein, a default judgment may be entered against them[,]" Ms. Coleman contends the remaining Defendants should be directed to answer the complaint. Finally, Ms. Coleman contends the aforementioned appellate opinion has a "significant impact. . . on the factual and legal conclusion made in this case." [*Id.*].

For the reasons set forth in the following discussion of Ms. Coleman's Motion for Relief from Judgment, the opinion of Our Court of Appeals has no impact on the Court's earlier rulings. The constitutionality of the search in that case has no bearing on the Court's earlier dismissal of Defendants Chase Mauney, Christopher Bersch, Adam D. Mosqueda, and Local Law Enforcement Official J.Revis. In fact, the Court referred the matter anew to Magistrate Judge Aboulhosn specifically for consideration of Ms. Coleman's claims against Defendants Berger, Page, Tejeda, Underwood, and Cockman. [ECF 42 at 18]. Accordingly, Ms. Coleman's objections are **OVERRULED**.

#### 4. Indigent Status

Ms. Coleman also objects to the PF&R's conclusion that she failed to provide new evidence as to her indigent status which would qualify her to proceed *in forma pauperis*. [ECF 57 at 3]. Specifically, she explains there is no change in her status as an indigent which should have qualified her for *in forma pauperis* status from the outset. [*Id.* at 3–5]. She contends "the PFR also rejected reconsidering recommending that in forma pauperis be granted, or specifying the reasons for the denial as required by law, so that the conclusory denials do not appear to be rooted in animus, because the denials are also denying Plaintiffs' right to have meaningful access to the Court." [*Id.*]. Ms. Coleman contends the reason Mr. Perez submitted his application to proceed *in forma pauperis* was because Ms. Coleman was unable to afford the expense of service.

Further, because Mr. Perez had to wait 11 months for the Court's disposition as to his Application to Proceed without Prepayment of Fees and Costs, Ms. Coleman contends it "would not have made any difference" had she filed an application for her own application sooner. [*Id.* at 4]. She contends it is unreasonable for the Court to deny a prolonged deadline for service because neither she nor Mr. Perez's indigent statuses changed following disposition of their applications. [*Id.*]. Accordingly, Ms. Coleman expresses concern that she "is being penalized for her inability to pay the cost of serving summons because of her status of indigency." [*Id.*].

Ms. Coleman misunderstands the Court's rationale for denial of Mr. Perez's application to proceed *in forma pauperis*. In the PF&R entered on January 31, 2025, Magistrate Judge Aboulhosn proposed the Court deny Mr. Perez's application to proceed *in forma pauperis* inasmuch as Mr. Perez failed to state cognizable claims for relief. [ECF 32 at 54]. First, the Court concluded Mr. Perez's application did "not specifically allege[] concrete facts" sufficient to state a claim pursuant to 42 U.S.C. §§ 1985 and 1986 relating to her allegations against Defendants

Berger, Page, Tejeda, Underwood, Thompson, and Cockman. [*Id.* at 55–56]. Second, the Court concluded Mr. Perez's *Monell* claim could not succeed because those claims were essentially claims against the Rockingham County Commission, and Mr. Perez had failed to establish a custom or policy supporting municipal liability for the alleged conduct. [*Id.* at 56–57]. Additionally, Magistrate Judge Aboulhosn recommended the Court dismiss Mr. Perez's § 1983 claims regarding unconstitutional searches and seizures. [*Id.* at 54–60]. Specifically, because Mr. Perez had not shown the Court he had successfully invalidated his supervised release violations or his state court convictions, he could not yet seek damages pursuant to § 1983. [*Id.*]. Accordingly, the Court's denial of Mr. Perez's application was not based on his indigent status, but instead based on the fact that the Complaint -- as pleaded -- failed to state cognizable claims for relief. [*See* ECF 32].

Ms. Coleman then waited until *after* the entry of the second PF&R to file another request for *in forma pauperis* status for the limited purpose of service of summons. When the Court denied Ms. Coleman's later request to proceed *in forma pauperis* for the sole purpose of serving summons, there had been no amendment of the complaint or change in circumstances related to the disposition of Mr. Perez's convictions. [*See* ECF 53]. Inasmuch as Ms. Coleman's Motion for Court Ordered Service of Summons included a supplemental request to proceed *in forma pauperis* for the sole purpose of serving summons, the Court viewed this as a renewed request from Plaintiffs, and not as an independent application by Ms. Coleman. [*See* ECF 51]. The Court had previously denied a similar request by Mr. Perez as moot inasmuch as it had already rejected Mr. Perez's application to proceed without prepayment of fees or costs. [*See* ECF 44]. Additionally, pursuant to Ms. Coleman's May 20, 2026, letter to the Court, she contends she now has the capacity to pay the cost of summons. Thus, any concern regarding review of her indigent status is

now moot. Accordingly, inasmuch as Ms. Coleman objects to the PF&R based on its denial of the prior application to proceed *in forma pauperis*, that objection is **OVERRULED**.

### *B. Motion for Relief from Judgment*

Ms. Coleman has filed a Motion for Relief from Judgment arising from the Plaintiffs' appeal in the civil forfeiture action where the Government sought forfeiture of certain funds seized during the searches at issue in the instant matter. [ECF 58]. As noted, our Court of Appeals held recently in a civil forfeiture proceeding that the search of Ms. Coleman's residence at Teal Drive was unconstitutional, reversing a decision not rendered by the Undersigned. *See United States v. Perez*, 167 F.4th 709 (4th Cir. 2026). There, the Court considered whether the terms and conditions of Mr. Perez's probation permitted the warrantless search of property he owned but at which he did not reside, explaining:

> With this background for probationary searches in mind, we find the search of Teal Drive unconstitutional for two reasons, each rooted in the protection of Coleman's Fourth Amendment rights as a third-party occupant. First, we conclude that the officers were not permitted to search Teal Drive merely based on Perez' ownership of that property because Coleman resided there as a tenant. And second, we conclude that the officers were required to have probable cause to believe that Perez also resided at Teal Drive before initiating a probationary search of Coleman's home, and they did not meet that standard here.

*Perez*, 167 F.4th at 717. While this holding was limited specifically to the search of Teal Drive, Ms. Coleman contends the ruling impacts the Court's earlier decisions as to all Defendants and all claims. [*See* ECF 58].

"Rule 60(b) affords relief only from a judgment, order, or proceeding which is final." *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) (emphasis in original); *see also* Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or

proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule. . . ."). Final orders adjudicate and resolve all claims as to all parties. Fed. R. Civ. P. 54(b); *see also Kiviti v. Bhatt*, 80 F.4th 520, 530 (4th Cir. 2023) ("[A]n order dismissing fewer than all the claims against a defendant is not final.").

Because the Court has not yet adjudicated all claims brought by Plaintiffs, the Court will construe Plaintiffs' Rule 60(b) motion as a Rule 54(b) motion to reconsider. *Fayetteville Inv'rs*, 936 F.2d at 1469–70. Rule 54(b) governs "any order or decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Pursuant to this rule, an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Fayetteville Inv'rs*, 936 F.2d at 1469 ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

The power to reconsider or modify interlocutory orders is "committed to the discretion of the district court." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003) (citing *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge")). That discretion is not subject to the "heightened standards for reconsideration" governing final orders. *Am. Canoe*, 326 F.3d at 514–15; *see also Fayetteville Inv'rs*, 936 F.2d at 1473 ("Interlocutory orders ... are left within the plenary power of the Court that rendered them to afford such relief from them as justice requires." (internal quotation marks omitted)). Rather, "a court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing 'manifest injustice.'" *Carlson v. Bos. Sci.*

*Corp., 856 F.3d 320*, 325 (4th Cir. 2017) (alteration in original) (quoting *Am. Canoe*, 326 F.3d at 515). While this standard is similar to that applicable to Rule 59(e) motions, "it departs from such standard by accounting for potentially different evidence discovered during litigation as opposed to the discovery of 'new evidence not available at trial.'" *Id.* (quoting *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

In her Motion, Ms. Coleman asks the Court "for an order setting aside its prior dismissal of the Federal Defendants Chase Mauney, Christopher Bersch, Adam D. Mosqueda, and Local Law Enforcement officials J.Revis [sic] and the remaining Defendants who failed to answer the Complaint." [ECF 58 at 1]. Plaintiffs contend that the same officers who were dismissed in the March 2025 Memorandum Opinion and Order were the officers who conducted the searches found unconstitutional in *Perez*. [*Id.*]. Accordingly, they assert the "intervening decision constitutes a legal mistake and an extraordinary circumstance, rendering the continued application of the dismissal inequitable and justifying relief under Rule 60(b)." [*Id.*]. And "the Doctrines of Collateral Estoppel and the [l]aw of the case require this Court to apply the Fourth Circuit's ruling and reinstate the dismissed Defendants." [*Id.*].

As thoroughly discussed by Magistrate Judge Aboulhosn in the January 2025 PF&R, the dismissal of the *Bivens* claims against Defendants Mauney, Bersch, and Mosqueda centered on the inapplicability of *Bivens* to the facts in the instant case. [*See* ECF 32]. Taking into consideration the fact that the *Perez* decision found the search of Ms. Coleman's house unconstitutional, the *Bivens* analysis remains the same. Specifically, as Magistrate Judge Aboulhosn explained:

> Although *Bivens* implied a damages remedy under the Fourth Amendment, the Supreme Court has made clear that *Bivens* does not extend to all Fourth Amendment claims. *Hernandez*, 589 U.S. at 102, 140 S.Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a

> claim in a case in which damages remedy was previously recognized.") The undersigned acknowledges that both the claims in *Bivens* and the instant action arise from an allegedly unreasonable search, but this similarity does not end the inquiry. "Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Annappareddy*, 996 F.3d at 134 (quoting *Cantu v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)); also see *Mays*, 70 F.4th at 202. Further, the instant case differs from Bivens in meaningful ways. In *Bivens*, the Supreme Court held the plaintiff had an implied cause of action for damages he incurred after agents from the Federal Bureau of Narcotics entered plaintiff's apartment, performed a warrantless search, arrested plaintiff for alleged narcotics violations, "manacled petitioner in front of his wife and children, and threatened to arrest the entire family." *Bivens*, 403 U.S. at 389, 396-97. Unlike *Bivens*, Plaintiffs do not claim the use of excessive force or an unconstitutional arrest during the search. *See Logsdon v. U.S. Marshal Service*, 91 F.4th 1352, 1355(10th Cir. 2024) ("The [Supreme] Court has said in effect that almost any difference between the case at hand and the three [Bivens] precedents can justify rejecting a cause of action."); *Bulger*, 62 F.4th at 137 ("The Supreme Court has warned lower courts to act with utmost hesitation when faced with actions that do not fall precisely under *Bivens*.") (emphasis added); *Wickline v. Cumberledge*, 2024 WL 4340045, *3 (S.D.W.Va. Sept. 27, 2024) ("Courts must . . . scrutinize every last detail of a prospective Bivens claim, nitpicking it for even a single "meaningful difference" between it and the Supreme Court's three *Bivens* actions.") In *Bivens*, none of the defendants were United States Probation Officers, no plaintiff was on supervised release, no plaintiff was subject to a supervised release condition allowing warrantless searches, there was no question of supervisory liability, or allegations of a conspiracy between United States Probation Officers with local authorities. . . . Thus, Plaintiffs' claims against Defendants Mauney and Bersch are meaningfully different because such involves a "new category of defendant." To the extent Plaintiffs assert a Fourth Amendment claim against Defendants Mauney and Mosqueda involving the alleged improper search and seizure conducted pursuant to a search warrant, such a claim also presents a new context because Bivens involved a warrantless search. The Fourth Circuit has recognized that the existence of a warrant fundamentally alters a case because "the Fourth Amendment sharply distinguishes between with warrant and warrantless searches." *Annappareddy*, 996 F.3d at 135-36. Clearly, "Fourth Amendment claims for with-warrant searches are governed by different legal standards than warrantless searches." *Wickline*, 2024 WL 4340045, at *4 (citations omitted). Thus, the existence of a search warrant creates a "new context" for purposes of *Bivens. Cain v. Rinehart*, 2023 WL 6439438, *3 (6th Cir. July 2023); also see *Wickline*, 2024 WL 4340045, *4 ("Plaintiffs' Fourth Amendment claim here would thus revolve around different legal and factual issues than *Bivens*. That is enough to present a new context.").

[ECF 32 at 45–47]. As discussed *supra*, the Court dismissed Plaintiffs' § 1983 claims for lack of subject matter jurisdiction because Plaintiffs alleged violations against Defendants Mauney,

Bersch, and Mosqueda in their official capacities. [ECF 42 at 15]. Such a dismissal is not affected by the constitutionality of the search of Teal Drive. Thus, the Court need not review dismissal of Plaintiffs' § 1983 claims. For similar reasons, the Court of Appeals' decision has no effect on the § 1985 and § 1986 claims. Dismissal there was based on the Plaintiffs' failure to allege that the Defendants had engaged in a conspiracy. [ECF 32 at 52–54]. The constitutionality of the search at Teal Drive has no impact on whether Plaintiffs sufficiently alleged the elements of conspiracy in their complaint. Thus, relief from that holding is unwarranted.

Among other things, Ms. Coleman specifically pled in her complaint that "Defendants DEA-TFO Mosqueda, Tejeda, Underwood and Thompson, in their individual and official capacity, knowingly, with malice did separate nefarious conspiracy to ran-sack the Teal Drive residence, while executing the search warrant." [ECF 1 ¶ 12]. She also alleged conspiracy regarding the Teal Drive search against Defendant Mauney. [*Id.*]. Inasmuch as her claims against Defendants Tejeda, Underwood, and Thompson remain active, the Court need only address whether dismissal of Defendants Mosqueda and Mauney remains appropriate considering our Court of Appeals' holding as to the constitutionality of the search of Teal Drive.

Upon review of the Court's earlier decisions, there is no reason to reinstate defendants Mosqueda or Mauney. Their dismissal rested on the (1) inapplicability of *Bivens* -- even considering the alleged unconstitutionality of the search, (2) the lack of subject matter jurisdiction relating to the § 1983 claims, inasmuch as Plaintiffs alleged claims against defendants in their official capacities, and (3) Plaintiffs' failure to properly allege the elements of conspiracy. [*See* ECFs 32, 42]. Inasmuch as the dismissal of these defendants did not rest on whether the search of Teal Drive was constitutional, the *Perez* holding does not have any impact on the Court's earlier decisions. Accordingly, the Motion for Relief from Judgment is **DENIED**.

### *C. Timely Service of Summons*

Inasmuch as *Perez* was published after Magistrate Judge Aboulhosn filed the PF&R recommending dismissal of Plaintiffs' remaining claims, the Court will address whether it serves the interests of justice to again extend the deadline to permit Ms. Coleman to effect service on the remaining Defendants -- specifically inasmuch as the ruling in *Perez* provided the return of certain funds to Ms. Coleman. *Federal Rule of Civil Procedure* 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Our Court of Appeals has held that a showing of good cause *requires* the Court to permit amendment of the deadline, while a lack of good cause makes extension of the deadline discretionary. *Gelin v. Shuman*, 35 F.4th 212, 220 (4th Cir. 2022) ("[A] district court possesses discretion to grant the plaintiff an extension of time to serve a defendant with the complaint and summons even absent a showing of good cause by the plaintiff for failing to serve the defendant during the 90-day period provided by the Rule[.]"). Inasmuch as the *Perez* decision does not impact the outcome of prior rulings, the Court finds no change in the status of the PF&R's findings as to good cause.

Additionally, as discussed in the Court's earlier decision, "[m]ore than two years have passed since the filing of the Complaint, and the Plaintiffs have shown exquisite familiarity with both the governing rules of procedure and our Court of Appeals' precedent." [ECF 53 at 4]. However, the Court recognizes Ms. Coleman's concerns regarding (1) consideration of her application to proceed *in forma pauperis*, and (2) the recent change in her indigent status as a result

of the *Perez* ruling. Accordingly, the Court finds it serves the interests of justice to permit Ms. Coleman to serve the remaining defendants **no later than October 1, 2026**.

## IV.

For the foregoing reasons, the Court **DENIES** the Motion for Relief from Judgment [ECF 58], **SUSTAINS IN PART and DENIES IN PART** Ms. Coleman's Objections [ECF 57], declines to adopt the PF&R [ECF 55], and **ORDERS** the case be **REFERRED** anew to Magistrate Judge Aboulhosn under the terms of the original referral order to address the Motion to Compel [ECF 62] and Motion to Replace Defendant. [ECF 65].

The Court **DIRECTS** the Clerk to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: September 18, 2026

Frank W. Volk
Chief United States District Judge